## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **ANNA LANGER, INDIVIDUALLY AND AS NEXT FRIEND OF A.G., A MINOR,** *Plaintiff*, <br><br> **V.** <br><br> **ABBOTT LABORATORIES, INC.,** *Defendant*. | **CIVIL ACTION NO. 5:22-cv-10927** <br><br><br> **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Anna Langer, Individually and as Next Friend of A.G., a Minor, brings this suit against Defendant Abbott Laboratories, Inc. ("Abbott"), and would respectfully show as follows:

### I. NATURE OF THE ACTION

1.     Plaintiff Anna Langer is the mother and next friend of A.G., a Minor.

2.     Defendant Abbott Laboratories, Inc. manufactures, labels, markets, distributes, and sells infant formulas under the Similac, Alimentum, and EleCare brands that have been recalled due to bacterial contamination.

3.     On February 17, 2022, the U.S. Food and Drug Administration ("FDA"), in conjunction with the Center for Disease Control ("CDC"), announced that it was investigating Defendant Abbott's Similac, Alimentum, and EleCare infant formula products manufactured at Defendant Abbott's facility in Sturgis, Michigan ("Sturgis

Facility"), following several consumers complaints of *Cronobacter sakazakii* and *Salmonella Newport* contamination. The FDA's advisory notice told consumers to avoid purchasing or using Defendant Abbott's Similac, Alimentum, and EleCare, and Defendant Abbott initiated a voluntary recall of those products.

4.      Defendant Abbott later announced that it found evidence of *Cronobacter sakazakii* at its Sturgis Facility.

5.      On February 28, 2022, Defendant Abbott also recalled several lots of Similac PM 60/40 infant formula "after learning of the death of an infant who tested positive for Cronobacter sakazakii" after consuming formula from a contaminated lot.

6.      Defendant Abbott knew about the ongoing risk of contamination and related noncompliance issues at its Sturgis Facility in 2019 if not before.

7.      Rather than recalling its dangerous infant formula in September 2021, Defendant Abbott Defendant waited until February 2022—after the FDA publicly announced it was investigating Defendant Abbott—before it decided to recall the products.

8.      Defendant Abbott's conscious and despicable decision not to recall its contaminated infant formulas caused severe injuries in A.G., a Minor, and the death of several others.

## II. JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332,

because there is complete diversity of the parties and the amount in controversy exceeds $75,000.

10.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial portion of the acts and conduct giving rise to the claims occurred within the district.

## III. THE PARTIES

11.     Plaintiff Langer is citizen of Ypsilanti, Washtenaw County, Michigan. Plaintiff Langer is the mother of A.G., a Minor, who became gravely ill after consuming Defendant Abbott's contaminated infant formula.

12.     Defendant Abbott Laboratories, Inc. is an Illinois company with its principal place of business at 100 Abbott Park Road, Abbott Park, Lake County, Illinois.

13.     This Court has specific personal jurisdiction over Defendant Abbott because Defendant Abbott has purposefully availed itself of the privileges and benefits of doing business in Michigan.

14.     Defendant Abbott subjected itself to jurisdiction in by doing business in Michigan and by contracting with businesses and by performing such contracts in part in Michigan and by committing torts where one or more elements of the tort or one or more of the tortious acts occurred in Michigan.

15.     The claims against Defendant Abbott are linked to its conduct, key elements of the episode-in-suit occurred in Michigan, and Defendant Abbott

participated in placing the infant formula at issue into the stream of commerce. Defendant Abbott's contacts with Michigan relate to the sale of infant formula, and all of the conduct associated with such products at issue in the potential claims is related to and connected with such contacts.

## IV. FACTUAL BACKGROUND

### A. Defendant Abbott's Powdered Infant Formulas

16.    Defendant Abbott is an American multinational medical device and health care company.

17.    Defendant Abbott was founded 130 years ago, and its products are currently distributed and sold in over 160 countries.

18.    In 2021, Defendant Abbott had gross sales of $43.1 billion.

19.    Defendant Abbott's nutrition division ("Abbott Nutrition") was created in 1903, and, since that time, it has been the number one seller of pediatric nutrition products.

20.    According to the *Global Infant Formula Market Report 2021-2025*, Defendant Abbott is considered one of the most dominant players in the baby formula market, which is expected to be valued at $93 billion by the year 2025.

21.    Defendant Abbott, through Abbott Nutrition, was and is engaged in the manufacture, distribution, marketing, and sale of several powdered infant formula brands, including the Similac, Alimentum, EleCare, and Similac PM 60/40 brands that

were recalled.

22.    Defendant Abbott's products are marketed, distributed, and sold in a uniform manner throughout the United States, and are available for purchase at thousands of retail locations and online through Abbott's website and those of other major retailers.

23.    Defendant Abbott holds itself out as a responsible company that is committed to manufacturing nutrition products that are safe for infants to consume.

24.    On its website and elsewhere, Defendant Abbott emphasizes its commitment to developing and manufacturing nutrition products that are safe for infants to consume.

25.    Despite these and other representations about the safety of its products, Abbott marketed, distributed, and sold contaminated infant formula throughout the United States, including in the State of Michigan.

**B. FDA Investigation of the Sturgis Facility and Subsequent Recalls**

26.    The Minnesota Department of Health investigated a case of an infant who was sickened by *Cronobacter sakazakii* in September 2021.

27.    Minnesota state health officials "knew that the infant had consumed powdered formula produced at an Abbott Nutrition facility in Sturgis, Michigan, and shared this information with the FDA and CDC in September."

28.    The FDA received reports of the first illness on September 21, 2021, and

the agency notified Abbott Laboratories the following day.

29.    The FDA completed an inspection of the Sturgis Facility on September

24, 2021, and issued five citations for violations of federal food-safety regulations:

    a.  Defendant Abbott's "personnel working directly with infant formula, its raw materials, packaging, or equipment or utensil contact surfaces did not wash hands thoroughly in a hand washing facility at a suitable temperature after the hands may have become soiled or contaminated."

    b.  Defendant Abbott "did not maintain a building used in the manufacture, processing, packing or condition holding of infant formula in a clean and sanitary condition."

    c.  "An instrument [Defendant Abbott] used to measure, regulate, or control a processing parameter was not properly maintained."

    d.  Defendant Abbott "did not monitor the temperature in a thermal processing equipment at a frequency as is necessary to maintain temperature control."

    e.  Defendant Abbott did not install a filter capable of retaining particles 0.5 micrometer or smaller when compressed gas is used at a product filling machine."

30.    The FDA also found "several positive Cronobacter results" from environmental samples during another inspection of the Sturgis facility, and an FDA review of Abbott's internal documents indicated that Abbott Laboratories previously destroyed infant formulas in connection with the contamination issue.

31.    The FDA continues to investigate complaints.

32.    Additional illnesses were reported in the months of November, December, and January, and all four infants consumed powdered infant formula manufactured at Abbott's Sturgis Facility. All four infants were hospitalized, and two

infants have died.

33.    On October 19, 2021, a former employee of Defendant Abbott who worked in the Quality Systems subunit at Abbott's Sturgis Facility sent a 34-page letter to the FDA detailing Defendant Abbott's longstanding pattern and practice of food-safety violations at the Sturgis Facility, along with a culture of silence and retaliation against those who reported violations or questioned Defendant Abbott's practices.

34.    Among other things, this whistleblower reported to the FDA that Defendant Abbott:

- a. Knowingly and intentionally falsified records;
- b. Withheld material information relating to food safety;
- c. Released untested infant formula;
- d. Knowingly deceived FDA investigators during a 2019 site audit;
- e. Failed to implement and observe clean-in-place procedures necessary to ensure food safety;
- f. Failed to take necessary corrective measures as demanded by Current Good Manufacturing Practices; and
- g. Failed to implement proper procedures necessary to ensure legally required traceability of infant formula manufactured at the Sturgis Facility.

35.    On February 17, 2022, the FDA announced that it was investigating complaints of infant illnesses related to products manufactured at Defendant Abbott's Sturgis Facility, including Defendant Abbott's Similac, Alimentum, and EleCare products following several consumers complaints of *Cronobacter sakazakii* and

*Salmonella Newport* contamination.

36.     The FDA's advisory notice alerted consumers to avoid purchasing or using Defendant Abbott's Similac, Alimentum,  and EleCare products.

37.     After the FDA made its public announcement, Defendant Abbott recalled the Similac, Alimentum, and EleCare brand products.

38.     This first formula recall came almost five months after it learned about the first reported illness related to infant formula produced at that facility.

39.     In conjunction with this first formula recall, Defendant Abbott announced that it had found evidence of *Cronobacter sakazakii* at the Sturgis Facility, but affirmatively represented it had been found only in non-product-contact areas. This public statement was directly contradicted by the FDA's inspection report issued March 18, 2022, which determined that Abbott had found *Cronobacter* both in the production areas, and in the finished formula itself.

> Furthermore, both FDA and your firm found evidence of *Cronobacter* spp. in your powdered infant formula production environment. Your firm also identified *Cronobacter* spp. in finished powdered infant formula products.

40.     Defendant Abbott has yet to explain why it waited nearly five months to make this announcement or warn consumers about the inherent risk of products manufactured at the Sturgis Facility.

41.     *Cronobacter* bacteria can cause sepsis and meningitis. Symptoms of sepsis and meningitis include poor feeding, irritability, temperature changes, grunting breaths,

and abnormal movements. *Cronobacter* infection may also cause bowel damage and may spread through the blood to other parts of the body.

42.    *Salmonella* bacteria can cause meningitis, bowel damage, and deadly infections. Most people with *Salmonella* infections develop diarrhea, fever, and abdominal cramps. More severe cases may include high fevers, aches, headaches, lethargy, rash, blood in the urine or stool, and in some cases, death.

43.    In or around December 2021, A.G., a Minor, consumed contaminated infant formula produced at Defendant Abbott's Sturgis, Michigan manufacturing facility. As a proximate or producing cause of consuming this recalled infant formula, A.G., a Minor, developed a severe *Salmonella* infection that required extensive medical treatment.

## V. CLAIMS FOR RELIEF

### Count I: Strict Liability – Failure to Warn

44.    Plaintiff Langer incorporates by reference each preceding and succeeding paragraph as if set forth fully herein.

45.    Defendant Abbott is liable under a theory of strict products liability as set forth in § 402A of the Restatement (Second) of Torts.

46.    At all relevant times, Defendant Abbott was engaged in the business of manufacturing, formulating, designing, marketing, testing, promoting, selling, distributing, and otherwise introducing contaminated Similac, Alimentum, and EleCare

powdered infant formula into the stream of interstate commerce.

47.     At all relevant times, Defendant Abbott knew or should have known that consumption of its contaminated Similac, Alimentum, and EleCare powdered infant formula significantly increased the risk of becoming infected with *Cronobacter* or *Salmonella*.

48.     Had Plaintiff Langer received warning or instruction from Defendant Abbott regarding its contaminated Similac, Alimentum, and EleCare powdered infant formula, she would not have fed it to A.G., a Minor.

49.     Plaintiff Langer was unaware that Defendant Abbott's Similac, Alimentum, and EleCare powdered infant formula was contaminated and significantly increased A.G., a Minor's risk of becoming infected with *Cronobacter* or *Salmonella*.

50.     As the direct and proximate result of the reasonably foreseeable use of contaminated infant formula manufactured, formulated, marketed, tested, promoted, sold, distributed, and introduced into the stream of commerce by Defendant Abbott, Plaintiff Langer and A.G., a Minor, have suffered and will continue to suffer damages for which they are entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

### Count II: Strict Liability – Design and Manufacturing Defect

51.     Plaintiff Langer incorporates by reference each preceding and succeeding paragraph as if set forth fully herein.

52.     Defendant Abbott is liable under a theory of strict products liability as set forth in § 402A of the Restatement (Second) of Torts.

53.     At all relevant times, Defendant Abbott was engaged in the business of manufacturing formulating, creating, designing, testing, labeling, packaging, supplying, marketing, promoting, selling, advertising, and otherwise introducing contaminated Similac, Alimentum, and EleCare powdered infant formula into the stream of interstate commerce, which they sold and distributed throughout the United States.

54.     At all relevant times, Defendant Abbott's contaminated infant formula was expected to and did reach Plaintiff Langer without a substantial change in condition.

55.     At all relevant times, the contaminated Similac, Alimentum, and EleCare powdered infant formula was defectively and improperly manufactured and designed by Defendant Abbott in that when the infant formula left the hands of Defendant Abbott, its foreseeable risks far outweighed the benefits associated with its design and formulation.

56.     At all relevant times, the contaminated Similac, Alimentum, and EleCare powdered infant formula was defectively manufactured and designed by Defendant Abbott in that its design and formulation was more dangerous than an ordinary consumer would expect when used in its intended and reasonably foreseeable manner.

57.     At all relevant times, the contaminated Similac, Alimentum, and EleCare powdered infant formula created significant risks to the health and safety of consumers

11

that far outweighed the risks posed by other products on the market used for the same purpose.

58.     At all relevant times, a reasonable and safer alternative design existed that could have feasibly been employed by Defendant Abbott to manufacture and sell infant formula with the same purpose as the contaminated Similac, Alimentum, and EleCare powdered infant formula. Despite knowledge of this reasonable and safer alternative design, Defendant Abbott failed to alter the infant formulas' designs and formulation. The magnitude of the danger created by the contaminated infant formula far outweighed the costs associated with using an alternative, safer design.

59.     At all relevant times, Defendant Abbott's contaminated Similac, Alimentum, and EleCare powdered infant formula deviated in its construction or quality from its specifications or planned output in a manner that rendered it unreasonably dangerous unfit for its intended or reasonably foreseeable uses.

60.     As a direct and proximate result of the defective design and manufacture of the contaminated Similac, Alimentum, and EleCare powdered infant formula, manufactured, formulated, marketed, tested, promoted, sold, distributed, and introduced into the stream of commerce by Defendant Abbott, Plaintiff Langer and A.G., a Minor, have suffered and will continue to suffer damages for which they are entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

## Count III: Negligence

61.     Plaintiff Langer incorporates by reference each preceding and succeeding paragraph as if set forth fully herein.

62.     At all relevant times, Defendant Abbott manufactured, designed, formulated, marketed, tested, promoted, supplied, sold, and distributed its infant formula in the regular course of business.

63.     At all relevant times, Defendant Abbott had a duty to act with reasonable care in the design, development, marketing, labeling, manufacturing, formulating, testing, monitoring, distribution, and sale of its infant formula.

64.     At all relevant times, Defendant Abbott had a duty to act with reasonable care and to warn Plaintiff Langer and the consuming public of the risk, dangers, and adverse side effects of its contaminated Similac, Alimentum, and EleCare powdered infant formula.

65.     At all relevant times, Defendant Abbott knew or should have known that its contaminated Similac, Alimentum, and EleCare powdered infant formula was unreasonably dangerous and defective when used in a reasonably foreseeable manner.

66.     Defendant Abbott breached its duty to Plaintiff Langer and was otherwise negligent in the design, development, marketing, labeling, manufacturing, formulating, testing, monitoring, distribution, and sale of the powdered infant formula utilized by Plaintiff Langer, which was inherently dangerous and defective and unfit and unsafe for

its intended and reasonably foreseeable use.

67.    As a direct and proximate result of Defendant Abbott's negligence, Plaintiff Langer and A.G., a Minor, have suffered and will continue to suffer injuries and damages for which they are entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

## Count IV: Fraud

68.    Plaintiff Langer incorporates by reference each preceding and succeeding paragraph as if set forth fully herein.

69.    At all relevant times, Defendant Abbott intentionally, willfully, or recklessly, with the intent to deceive, misrepresented or concealed material facts to consumers and users, including Plaintiff Langer.

70.    At all relevant times, Defendant Abbott misrepresented or concealed material facts concerning the contaminated Similac, Alimentum, and EleCare powdered infant formula to consumers, including Plaintiff Langer, with knowledge of the falsity of their misrepresentations.

71.    Defendant Abbott, through its advertisements, knowingly misrepresented to Plaintiff and the public that its contaminated Similac, Alimentum, and EleCare powdered infant formula was safe to consume.

72.    Defendant Abbott intentionally failed to disclose that its Similac, Alimentum, and EleCare powdered infant formula was contaminated.

73.     Despite knowing about the contaminated nature of its Similac, Alimentum, and EleCare powdered infant formula and its likelihood to increase the risk of becoming infected with *Cronobacter* or *Salmonella*, Defendant Abbott falsely marketed, advertised, labeled, and sold its contaminated Similac, Alimentum, and EleCare powdered infant formula as safe for public use and consumption.

74.     At all relevant times, Defendant Abbott actively, knowingly, and intentionally concealed and misrepresented these material facts to the consuming public with the intent to deceive the public and Plaintiff Langer, and with the intent that consumers would purchase and use the infant formula.

75.     At all relevant times, the consuming public, including Plaintiff Langer, would not otherwise have purchased or used the contaminated Similac, Alimentum, and EleCare powdered infant formula if they had been informed of the risks associated with its use and consumption.

76.     At all relevant times, Plaintiff Langer relied on Defendant Abbott's misrepresentations concerning the safety of its infant formula when purchasing Similac, Alimentum, and EleCare powdered infant formula and feeding it to A.G., and his reliance was reasonable and justified.

77.     As a direct and proximate result of Defendant Abbott's fraudulent conduct concerning the contaminated Similac, Alimentum, and EleCare powdered infant formula as described herein, Plaintiff Langer and A.G., a Minor, have suffered

and will continue to suffer from injuries and damages for which they are entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

**Count V: Negligent Misrepresentation**

78.    Plaintiff Langer incorporates by reference each preceding and succeeding paragraph as if set forth fully herein.

79.    At all relevant times, the Defendant Abbott was engaged in the business of manufacturing, formulating, marketing, testing, promoting, selling, and distributing infant formula.

80.    At all relevant times, Defendant Abbott had a duty to disclose to consumers and the public material facts about its infant formula, including the material facts that its contaminated Similac, Alimentum, and EleCare powdered infant formula was unsafe to consume and that consuming it would substantially increase the risk of becoming infected with *Cronobacter* or *Salmonella*.

81.    Through its acts and omissions in advertising, promoting, labeling, and otherwise, Defendant Abbott made public misrepresentations of material facts to and concealed material facts from consumers like Plaintiff Langer concerning the character, safety, and effectiveness of its contaminated Similac, Alimentum, and EleCare powdered infant formula.

82.    Had Defendant Abbott disclosed true and accurate material facts

concerning the risks of the use of its contaminated Similac, Alimentum, and EleCare powdered infant formula, in particular the risk of becoming infected with *Cronobacter* or *Salmonella*, Plaintiff Langer would not have purchased or received or used the infant formula.

83.     Plaintiff Langer's reliance upon Defendant Abbott's misrepresentations and omissions were justified and reasonable because, among other things, those misrepresentations and omissions were made by individuals and entities who were in a position to know the material facts concerning Defendant Abbott's contaminated Similac, Alimentum, and EleCare powdered infant formula and the connection between the contaminated infant formula and the risk of becoming infected with *Cronobacter* or *Salmonella*, while Plaintiff Langer was not in a position to know these material facts; and because Defendant Abbott failed to warn or otherwise provide notice to the consuming public as to the risks of its contaminated Similac, Alimentum, and EleCare powdered infant formula, thereby inducing Plaintiff Langer to purchase and use contaminated infant formula in lieu of safer alternatives and in ways that created unreasonably dangerous risks to the health of A.G., a Minor.

84.     At all relevant times, Defendant Abbott's corporate officers, directors, and managing agents knew of and ratified the acts of Defendant Abbott as alleged herein.

85.     As a direct and proximate result of Defendant Abbott's negligent misrepresentations and omissions concerning the risks and benefits of its contaminated

Similac, Alimentum, and EleCare powdered infant formula, Plaintiff Langer and A.G., a Minor, have suffered and will continue to suffer from injuries and damages for which they are entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

## Count VI: Breach of Express Warranty

86.    Plaintiff Langer incorporates by reference each preceding and succeeding paragraph as if set forth fully herein.

87.    Defendant Abbott, through its advertising and promotional materials, expressly warranted and affirmed that its infant formula was safe for the uses for which they were intended and for uses which were reasonably foreseeable. Defendant Abbott's express warranties extended beyond delivery of the infant formula and expressly warranted the future performance of the infant formula.

88.    Defendant Abbott, through its advertisements, made express warranties to Plaintiff Langer and the public that its infant formula was safe to use and consume.

89.    At all relevant times, Defendant Abbott breached these express warranties in that its infant formula was unsafe for use and consumption because the powders were contaminated and therefore significantly increased the risk of becoming infected with *Cronobacter* or *Salmonella*.

90.    At all relevant times, Defendant Abbott had knowledge of the hazards and health risks posed by using and consuming its contaminated Similac, Alimentum, and

EleCare powdered infant formula.

91.     At all relevant times, Defendant Abbott willfully failed to disclose the defects and health risks of its contaminated Similac, Alimentum, and EleCare powdered infant formula to Plaintiff Langer and the consuming public.

92.     At all relevant times, in reliance upon the express warranties made by Defendant Abbott, Plaintiff Langer purchased and received and fed Defendant Abbott's contaminated powdered infant formula to A.G., a Minor, believing that it was safe.

93.     As a direct and proximate result of Defendant Abbott's express warranties concerning its contaminated Similac, Alimentum, and EleCare powdered infant formula, as described herein, Plaintiff Langer and A.G., a Minor, have suffered and will continue to suffer from injuries and damages for which they are entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

### Count VII: Breach of Implied Warranty

94.     Plaintiff Langer incorporates by reference each preceding and succeeding paragraph as if set forth fully herein.

95.     At the time Defendant Abbott manufactured, marketed, labeled, promoted, distributed, and sold its contaminated Similac, Alimentum, and EleCare powdered infant formula, Defendant Abbott knew of the uses for which the infant formula was intended, and impliedly warranted the infant formula was merchantable

and fit for the ordinary purposes for which it was intended.

96.    At the time it left Defendant Abbott's possession, the contaminated Similac, Alimentum, and EleCare powdered infant formula was not merchantable or fit for its ordinary purpose because it had a propensity to lead to the serious personal injuries described herein.

97.    Members of the consuming public, including consumers such as Plaintiff Langer, were intended beneficiaries and third-party beneficiaries of this warranty.

98.    Plaintiff Langer reasonably relied on representations that the infant formula safe and free of defects.

99.    Defendant Abbott's breach of the implied warranty of merchantability and fitness for a particular purpose was the direct and proximate cause of Plaintiff Langer's and A.G., a Minor's injuries.

100.    As a direct and proximate result of Defendant Abbott's breach implied warranties concerning its contaminated Similac, Alimentum, and EleCare powdered infant formula, as described herein, Plaintiff Langer and A.G., a Minor have suffered and will continue to suffer from injuries and damages for which they entitled to recovery, including but not limited to compensatory damages, consequential damages, interest, costs, and attorneys' fees.

## Count VIII: Violation of the Michigan Consumer Protection Act

101.    Plaintiff Langer incorporates by reference each preceding and succeeding

paragraph as if set forth fully herein.

102.   Plaintiff Langer was a consumer and purchased and used Defendant Abbott's contaminated Similac, Alimentum, and EleCare powdered infant formula primarily for personal use and thereby suffered ascertainable losses, including mental anguish, as a result of Defendant Abbott's acts and omissions in violation of the applicable consumer protection laws.

103.   Unfair methods of competition or deceptive acts or practices that were proscribed by law include the following:

   a.  Representing that goods or services had characteristics, ingredients, user benefits, or qualities that they did not have;

   b.  Advertising goods or services with the intent not to sell them as advertised;

   c.  Over-promoting infant formulas, including but not limited to over-promoting their safety;

   d.  Engaging in fraudulent or deceptive conduct that created a likelihood of confusion or misunderstanding;

   e.  Making representations of fact or statements of fact material to the transaction such that a Plaintiff Langer reasonably believed the represented or suggested state of affairs to be other than it actually was; and

   f.  Failing to reveal facts that were material to the transaction in light of representations of fact made in a positive manner.

104.   Defendant Abbott violated consumer protection laws through their use of false and misleading representations and omissions of material facts relating to the

safety of its contaminated Similac, Alimentum, and EleCare powdered infant formula.

105.    Defendant Abbott uniformly communicated the purported benefits of its contaminated Similac, Alimentum, and EleCare powdered infant formula while failing to disclose the serious and dangerous risk of using these products and the true state of the infant formula's safety, efficacy, and usefulness. Defendant Abbott made these representations to consumers, including Plaintiff Langer, in the marketing and advertising described herein. Defendant Abbott's conduct in connection with its contaminated infant formula was also impermissible and illegal in that it created a likelihood of confusion and misunderstanding because Defendant Abbott misleadingly, falsely, and deceptively represented and omitted numerous material facts regarding, among other things, the utility, benefits, safety, efficacy, and advantages of its contaminated Similac, Alimentum, and EleCare powdered infant formula.

106.    Additionally, Defendant Abbott's violation of these consumer protection laws were committed knowingly and intentionally; therefore, Plaintiff Langer should recover, in addition to the actual damages, treble damages as allowed by law.

107.    Defendant Abbott's violation of consumer protection laws concerning its contaminated Similac, Alimentum, and EleCare powdered infant formula, as described herein, was a producing cause of Plaintiff Langer's and A.G., a Minor's injuries and damages, for which they are entitled to recovery, including but not limited to compensatory damages, consequential damages, treble damages, interest, costs, and

attorneys' fees.

## Count IX: Fraudulent Concealment

108.    Plaintiff Langer incorporates by reference each preceding and succeeding paragraph as if set forth fully herein.

109.    Prior to Plaintiff Langer's purchase and use of the contaminated Similac, Alimentum, and EleCare powdered infant formula and during the period in which he actually used the infant formula, Defendant Abbott fraudulently suppressed material information regarding the safety and efficacy of the infant formula, including but not limited to information the infant formula was contaminated. The fraudulent misrepresentations and fraudulent concealment described throughout this Complaint were intentional and intended maintain the sales volumes of Defendant Abbott's infant formula.

110.    Defendant Abbott intentionally concealed safety issues with its contaminated Similac, Alimentum, and EleCare powdered infant formula in order to induce consumers, including Plaintiff Langer, to purchase and obtain the infant formula.

111.    At the time Defendant Abbott concealed the fact that the contaminated Similac, Alimentum, and EleCare powdered infant formula was not safe as designed and marketed, it was under a duty to communicate this information to the general public in such a manner that the general public could appreciate the risks associated with using the infant formula.

112.    Plaintiff Langer relied upon Defendant Abbott's false and fraudulent misrepresentations and concealments regarding the safety of its infant formula.

113.    As a direct and proximate result of Defendant Abbott's malicious and intentional concealment of material and information, Defendant Abbott caused or significantly contributed to Plaintiff Langer's and A.G., a Minor's injuries.

114.    Defendant Abbott furthered this fraudulent concealment through a continued and systematic failure to disclose information to Plaintiff Langer and the public.

115.    Defendant Abbott's acts before, during, and after the acts and omissions causing Plaintiff Langer's and A.G., a Minor's injuries prevented Plaintiff Langer from discovering the injury or cause thereof.

116.    Defendant Abbott's conduct, as described in the preceding paragraphs, amounts to conduct purposely committed, which Defendant Abbott must have realized was dangerous, needless, and reckless, without regard to the consequences or the rights and safety of Plaintiff Langer and A.G., a Minor.

117.    As a direct and proximate result of Defendant Abbott's fraudulent concealment concerning the contaminated Similac, Alimentum, and EleCare powdered infant formula, as described herein, Plaintiff Langer and A.G., a Minor, have suffered and will continue to suffer injuries and damages for which they entitled to recovery, including but not limited to compensatory damages, consequential damages, interest,

costs, and attorneys' fees.

## Count X: Gross Negligence

118.  Plaintiff Langer incorporates by reference each preceding and succeeding paragraph as if set forth fully herein.

119.  Defendant Abbott risked the lives of the consumers and users of its infant formula, including A.G., a Minor, with knowledge of the infant formula's contamination and safety problems, and suppressed this knowledge from Plaintiff Langer and the general public. Defendant Abbott made conscious decisions not to redesign, relabel, or withdraw its contaminated Similac, Alimentum, and EleCare powdered infant formula, and not to warn or inform Plaintiff Langer or the unsuspecting consuming public about the risks posed by its contaminated Similac, Alimentum, and EleCare powdered infant formula.

120.  Defendant Abbott's conduct, as described herein, was outrageous and involved an extreme risk of harm to others.

121.  Despite its knowledge of this extreme risk of harm, Defendant Abbott nevertheless persisted in performing the acts and omissions described herein with a conscious indifference to and reckless disregard of the rights, safety, or welfare of others.

122.  Defendant Abbott's extreme and outrageous conduct warrants exemplary damages.

123. Defendant Abbott's gross negligence was a proximate cause of Plaintiff Langer's and A.G., a Minor's injuries and damages. Accordingly, Defendant Abbott was grossly negligent, and Plaintiff Langer and A.G., a Minor are entitled to recover exemplary damages in an amount sufficient to punish Defendant Abbott and deter others from engaging in similar conduct.

### Count XI: Unjust Enrichment

124. Plaintiff Langer incorporates by reference each preceding and succeeding paragraph as if set forth fully herein.

125. Defendant Abbott profited unjustly from the sale of contaminated Similac, Alimentum, and EleCare powdered infant formula as a result of concealing its knowledge that the infant formula posed a serious health risk to consumers.

126. As a proximate result of their wrongful acts and omissions described herein, and as a result of their ill-gotten benefits and profits, Defendant Abbott has been unjustly enriched at the expense of Plaintiff Langer and other purchasers of the contaminated Similac, Alimentum, and EleCare powdered infant formula.

127. The circumstances as described herein are such that it would be inequitable for Defendant Abbott to retain these ill-gotten benefits and profits without paying the value thereof to Plaintiff Langer and the other purchasers of contaminated Similac, Alimentum, and EleCare powdered infant formula.

128. Plaintiff Langer is entitled to restitution of the amount of Defendant

Abbott's ill-gotten gains, benefits, and profits, including interest, resulting from the unlawful, unjust, and inequitable conduct described herein.

129.   Accordingly, Plaintiff Langer seeks an order establishing Defendant Abbott as the constructive trustee of the gains, benefits, and profits that served to unjustly enrich it, together with interest during the period in which Defendant Abbott has retained such benefits and profits, and requiring Defendant Abbott to disgorge those profits to Plaintiff Langer and the other purchasers of the contaminated Similac, Alimentum, and EleCare powdered infant formula in a manner to be determined by the Court.

## VI. REQUEST FOR RELIEF

130.   As a result of the foregoing, Plaintiff Langer requests that this Court enter a judgment in his and A.G., a Minor's favor and against Defendant Abbott for:

a.   actual damages in such amount to be determined at trial;

b.   exemplary damages sufficient to punish Defendant Abbot and deter it and others from future wrongful conduct;

c.   treble damages as allowed by law; and

d.   attorneys' fees as allowed by law;

e.   costs and expenses as allowed by law;

f.   pre- and post-judgment interest as allowed by law;

g.   any other relief the Court may deem just and proper.

## VII. JURY TRIAL DEMANDED

131.   Plaintiff demands a trial by jury on all claims so triable.

Dated:  May 1, 2022                              Respectfully Submitted,

*/s/ Patrick A. Luff*
Patrick A. Luff
LUFF LAW FIRM, PLLC
10440 N. Central Expressway
Suite 950
Dallas, TX 75231
Telephone: (469) 607-5822
Facsimile: (214) 427-5616
Email: luff@lufflaw.com

*Attorneys for Plaintiff*